# No. 09-5121

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

**CYNTHIA ARTIS, et al.,**

**Appellants,**

**v.**

**BEN S. BERNANKE,**
**Chairman, Board of Governors of the Federal Reserve System,**

**Appellee.**

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**
_____

**PETITION FOR PANEL PARTIAL REHEARING**
_____

KENNETH M. WILLNER
*Paul, Hastings, Janofsky & Walker, LLP*

OF COUNSEL:                          *875 15th Street, N.W.*
                                     *Washington, D.C. 20005*
RICHARD M. ASHTON                    *202-551-1700*
KATHERINE H. WHEATLEY
JOHN L. KURAY                        Counsel for Appellee
                                     Ben S. Bernanke

i

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ..................................................................... ii

PETITION FOR PANEL REHEARING................................................... 1

   1. The Board Repeatedly Raised the Time Limitation Defense in Numerous Pleadings Before the District Court................................................................ 3

   2. The Board Did Not Waive The Time Limitation Defense In Responding  To The Secretaries' Motion For Reconsideration Under Rule 59(e) ................... 7

   3. Allegations of Discriminatory Performance Evaluations Should Be Dismissed Because They Were Not Timely Raised in Counseling ............. 11

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

## Cases

*Arthur v. King*,
    500 F.3d 1335 (11th Cir. 2007)....................................................................8

*Briggs v. Washington Metro. Area Trans. Auth.*,
    481 F.3d 839 (D.C. Cir. 2007) ...................................................................9

*Fund For Animals v. Norton*,
    326 F. Supp. 2d 124 (D.D.C. 2004) ......................................................8

*Jones v. Bernanke*,
    557 F.3d 670 (D.C. Cir. 2009) ................................................................9

*Messina v. Krakower*,
    439 F.3d 755 (D.C. Cir. 2006) ................................................................8

*Miller v. New Hampshire Dept. of Corrections*,
    296 F.3d 18 (1st Cir. 2002)....................................................................12

*Nat'l Treasury Emps. Union v. IRS*,
    765 F.2d 1174 (D.C. Cir. 1985) ..............................................................7

*National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101, 117-118 (2002) ....................................................... 12, 13

*Pacific Ins. Co. v. American Nat. Fire Ins. Co.*,
    148 F.3d 396 (4th Cir. 1998)....................................................................8

*Palmer v. Kelly*,
    17 F.3d 1490 (D.C. Cir. 1994) ..............................................................12

*Pharmaceutical Care Management Ass'n v. District of Columbia*,
    613 F.3d 179 (D.C. Cir. 2010) ...............................................................9

*Washburn v. Lavoie*,
    437 F.3d 84 (D.C. Cir. 2006) ................................................................9

**Regulations**

12 C.F.R. § 268.104(a)(1) ................................................................. 3, 11

29 C.F.R. § 1614.105(a)(1) .............................................................. 3, 11

**Other**

*Federal Practice and Procedure* § 2810.1 (2d ed. 1995) ..........................................8

**09-5121**

_____

**IN THE UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA CIRCUIT**
_____

**CYNTHIA ARTIS, et al.,
Appellants,
v.
BEN S. BERNANKE, CHAIRMAN OF THE
BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,
Appellee.**
_____

PETITION FOR PANEL PARTIAL REHEARING

Appellee Ben S. Bernanke, Chairman of the Board of Governors of the

Federal Reserve System (the "Board"), respectfully seeks rehearing in part of the

January 11, 2011 panel decision, to the extent it reinstates plaintiffs' allegations

regarding their performance evaluations.  In overturning the district court's

dismissal of the complaint in this equal employment opportunity case for failure to

comply with pre-complaint counseling requirements, the panel held that the

plaintiffs had exhausted their administrative remedies by providing Board

counselors with sufficient details of alleged discriminatory employment actions.  In

particular, the panel opinion found that the issue of alleged discriminatory

performance evaluations was raised with the counselors by two plaintiffs, Barbara

Carter and Donna Dorey.  Slip op. at 11.  The panel declined to consider the Board's argument that any specific alleged discriminatory employment actions discussed with counselors were untimely under the Board's regulations, finding that the Board had waived this issue by failing to raise it in the district court.  Slip op. at 14-15.

The panel overlooked the fact that the Board expressly argued in several district court pleadings that the performance evaluation allegations raised by plaintiffs Carter and Dorey were not raised within 45 days of the alleged discriminatory acts as required by the Board's regulations.  This argument thus was not waived on appeal and should have been considered by the panel.

As the panel opinion recognizes, it is uncontested that only plaintiffs Carter and Dorey addressed in counseling alleged discriminatory actions relating to performance evaluations.  It is also uncontested in the record below that the most recent performance evaluations received by Carter and Dorey took place more than 45 days before the plaintiffs initiated counseling.  Accordingly, the panel should affirm the district court's dismissal of the complaint to the extent the complaint alleges unlawful discrimination in performance evaluations.

1. <u>The Board Repeatedly Raised the Time Limitation Defense in Numerous Pleadings Before the District Court</u>

As the Board argued in the district court and in its brief before this Court, a complainant seeking to bring a Title VII claim against a federal agency must seek counseling within 45 days of the date of the occurrence of the discriminatory act or practice.   12 C.F.R. § 268.104(a)(1); 29 C.F.R. § 1614.105(a)(1).  Since the first motion to dismiss this case was filed in 1999, the Board has argued that the plaintiffs' claims, particularly regarding their performance evaluations, were untimely because they did not meet this requirement.

In the Board's Memorandum in Support of Motion to Dismiss, filed on October 15, 1999, the Board pointed out that plaintiffs Carter and Dorey's claims relating to their 1996 performance evaluations were untimely under the Board's regulations, 12 C.F.R. § 268.104, because they had received the evaluation more than 45 days before counselor contact.  Docket Entry 18 (case no. 99-2073), JA 5, at 20-21.[1]  The Board attached to its motion a declaration the sole purpose of which was to address the timeliness issue by setting out the dates on which these plaintiffs received their evaluations in 1996.  Declaration of Christine Fields,

---

[1]  Because two cases were consolidated in the district court, *see* Slip op. at p. 5 n.3, references to district court pleadings in this petition will refer to the case number in which the relevant pleading was filed.  Full docket sheets for both cases are at JA 1-32.

4

Exhibit 21 to Motion to Dismiss.  The issue of timeliness of counselor contact was also discussed in the Board's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint, filed December 16, 1999, at 7-8, Docket Entry 24 (99-2073), JA 6, where the Board noted that Ms. Carter's "1996 [performance appraisal] was issued more than 45 days before counselor contact, and the issue was no longer timely in January 1997 under the Board's EEO rules."[2]

In 2001, the parties briefed the Board's motion to dismiss the Second Amended Complaint, and again the Board raised the issue of the timeliness of counselor contact.[3]  In its Motion to Dismiss, filed October 1, 2001, the Board again argued that the specific allegations regarding plaintiffs Carter and Dorey's

[2] On August 15, 2001, following plaintiffs' filing of their separate but substantively identical action in Case No. 01-400, the district court consolidated the new case with existing case no. 99-2073, ordered the plaintiffs to file the complaint in 01-400 as the second amended complaint in 99-2073, and denied the Board's motion to dismiss the first amended complaint in 99-2073 without prejudice to the Board renewing its motion with regard to the second amended complaint.  See Order of August 15, 2001, Docket Entry 57 (filed in case no. 99-2073) (JA 8).

[3] In two interim pleadings, the Board generally raised its timeliness argument.  *See* Defendant's Opposition to Plaintiffs' "Motion in Suggestion of Mootness" and Response to Motion to Consolidate at 3 n.1, Docket Entry 53, case number 99-2073, JA 8 ("The few plaintiffs who did provide any details to substantiate their claim of discrimination raised claims that had occurred more than 45 days prior to counseling and were thus untimely.") and  Defendant's Motion to Dismiss Complaint at 2, Docket Entry 3, case no.01-400, JA 14, ("To the extent more specific allegations were made, they were untimely.").

performance evaluations related to incidents that occurred more than 45 days

before counselor contact.  Defendant's Memorandum In Support of Motion to

Dismiss Plaintiffs' Second Amended Complaint, at 25 (Docket entry 63, case no.

99-2073, JA 9; unnumbered filing in case no. 01-400, JA 14).  The Board attached

as Exhibit 9 the same declaration it had previously submitted showing that the

performance evaluations were provided more than 45 days before counseling

began.  *Id.* at Exhibit 9.  The plaintiffs responded with highlighted copies of the

counseling reports intended to show that they had raised specific claims.  Docket

Entry 60 (case no. 99-2073), JA 9; unnumbered filing in case no. 01-400, JA 15.

In its reply, the Board addressed each of the highlighted portions of the counselor

reports relied upon by the plaintiffs, and again specifically pointed out that their

claims relating to performance evaluations were untimely.   Reply to Plaintiffs'

Opposition to Motion to Dismiss Second Amended Complaint, filed on November

9, 2001 (Docket entry 69 in case no. 99-2073, JA 9), pp. 2, 6, 7.[4]  The Board went

through each highlighted portion of the Counselor Reports and showed that "not a

single incident of alleged discrimination within the 45 days before counselor

contact is identified in the plaintiffs' highlighted text."  *Id.* at 8.

---

[4]  The Reply summarized the Board's opening brief as showing that the secretaries
"had not provided Board EEO counselors with information regarding *timely*,
specific instances of discrimination during the counseling sessions."  Reply at 1
(emphasis added).

The district court denied the Board's motion to dismiss without prejudice, due to the plaintiffs' claims that the Board had rendered counseling "futile" through various actions.  Docket entry 75 in 99-2073, September 26, 2002 (JA 10). The court ordered "jurisdictional discovery" to explore the issue, and, following that discovery, ordered the parties to file short (10-page) pleadings "focusing on the sufficiency of plaintiffs' compliance with administrative counseling requirements and whether any alleged deficiencies should be excused by the futility doctrine".  Docket No. 39 in 01-400, at 5 (August 8, 2005), JA 20.  In its September 8, 2005, pleading, the Board, as directed, focused on the futility issue, but concluded by requesting that the plaintiffs' claims be dismissed "for the reasons set forth above and in the October 1, 2001 motion to dismiss". Defendant's Motion and Memorandum Regarding Plaintiffs' Failure to Satisfy Administrative Counseling Requirements, Docket entry 40 in 01-400, at 11, JA 21. This reference incorporated the Board's arguments, made repeatedly since 2001, that any specific claims of discriminatory actions made during the counseling sessions, and in particular the claims regarding performance evaluations, were untimely.

In sum, before the district court issued its order dismissing the plaintiffs' case, the Board argued on numerous occasions that the plaintiffs had not raised any timely allegations of discrimination particularly in regard to their performance

evaluations, and thus preserved the time limitation defense on appeal to this Court.

Accordingly, the Board respectfully suggests that the rule cited by the panel, slip

op. at 14, that "[a] defense that has not been raised in a pleading, by motion, or at

trial normally will be considered waived and cannot be heard for the first time on

appeal," was misapplied. *Nat'l Treasury Emps. Union v. IRS,* 765 F.2d 1174, 1176

n.1 (D.C. Cir. 1985). Because the Board *did* raise this defense by motion, it was

not waived.

2. <u>The Board Did Not Waive The Time Limitation Defense In Responding To The Secretaries' Motion For Reconsideration Under Rule 59(e)</u>

In its ruling regarding the Board's waiver of the timeliness argument, the

panel appears to hold that the Board failed to raise the issue of timeliness in its

opposition to the plaintiffs' Rule 59(e) motion for reconsideration, and that this

resulted in a waiver of the Board's timeliness defense. Slip op. at 15. Because the

Board expressly raised the untimeliness of the alleged discriminatory performance

evaluations in both of its motions to dismiss and in other pleadings prior to the

district court's order dismissing the complaint, the fact that the Board did not refer

to this argument in its initial opposition to plaintiffs' motion to alter or amend

judgment or for reconsideration under Rule 59(e), Fed. R. Civ. P., should not

prevent the Board from raising that argument on appeal.

The Board is aware of no precedent that requires a litigant responding to a motion for reconsideration to re-argue all of its substantive positions raised in the underlying motion to dismiss, or risk having those positions held to be waived. Indeed, the authority is to the contrary:  a motion for reconsideration is no place for re-argument of matter already presented to the Court.  "Rule 59(e) motions are not intended to be used to relitigate matters already argued and disposed of; they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." *Fund For Animals v. Norton*, 326 F. Supp. 2d 124, 125-26 (D.D.C. 2004); *accord Messina v. Krakower*, 439 F.3d 755, 759 (D.C. Cir. 2006) (affirming denial of Rule 59(e) motion where the movant cited no intervening change in law, provided no new evidence that was not previously available, and failed to establish an error of law or fact); *Arthur v. King*, 500 F.3d 1335, 1342 (11th Cir. 2007) (Rule 59(e) motion "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."); *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (same, quoting 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995).  The panel's ruling directly contravenes this fundamental precept applicable to motions for reconsideration.

The panel's finding of waiver also contradicts the rule that the Court may affirm the district court on any ground that the record supports, "provided that the

opposing party has had a fair opportunity to [address] that ground." *Briggs v. Washington Metro. Area Trans. Auth.*, 481 F.3d 839, 843 (D.C. Cir. 2007), quoting *Washburn v. Lavoie*, 437 F.3d 84, 89 (D.C. Cir. 2006); *see Pharmaceutical Care Management Ass'n v. District of Columbia*, 613 F.3d 179, 189 (D.C. Cir. 2010 (court of appeals "may affirm on any ground properly raised," even if not passed on by the district court); *Jones v. Bernanke,* 557 F.3d 670, 676 (D.C. Cir. 2009) (Board did not waive a statute of limitations defense by failing to raise it in a motion for summary judgment after the issue had been litigated in a motion to amend the complaint).  Because the Board repeatedly raised the issue of the plaintiffs' untimely counselor contact, the plaintiffs had a "fair opportunity" to address the issue in the district court, and the issue was preserved for appeal.

In their motion for reconsideration of the district court's dismissal order, the plaintiffs argued that the district judge had ignored record evidence of their counseling efforts.  Plaintiffs' Motion to Alter and Amend the Judgment and for Reconsideration Pursuant to F.R.Civ.P. 59(e), Docket entry 72 (case no. 01-400), filed February 14, 2007.  In its opposition, the Board – rather than re-arguing all of the points it made in its motion to dismiss – focused on the legal standards applicable to a motion under Rule 59(e).  The Board argued that the 59(e) motion should be denied because it failed to show any new evidence, change in law or manifest injustice; instead it simply sought to relitigate issues that were or could

have been raised prior to judgment.  Defendant's Opposition to Plaintiffs' Motion to Alter and Amend the Judgment, Docket entry 73-1 (case no. 01-400), filed February 26, 2007, at 2-6.  The Board cannot be faulted for providing a response addressed to the applicable legal standard for a Rule 59(e) motion, instead of re-arguing at length the arguments it had already made on the underlying motion on which it had prevailed.  Rather, judicial economy is best served by having the party responding to a Rule 59(e) motion focus its efforts and the court's attention, as the Board did, on the legal standards applicable to the motion at hand.

Moreover, the Board did in fact raise the timeliness issue in the context of the reconsideration motion.  When the plaintiffs responded to the Board's opposition by filing a new declaration by one of them, Kim Hardy, regarding her experiences at the 1997 counseling session, the Board responded by pointing out that Ms. Hardy had not raised her claims in timely fashion.  See Transcript of Hearing of February 27, 2008 (Docket No. 77, filed March 11, 2008), p. 36 (pointing out that the one specific complaint Ms. Hardy recounted related to an incident that occurred in 1995); Defendant's Supplemental Brief on the Issue of Exhaustion at 9-10, filed on March 26, 2008, Docket Entry 80 (case no. 01-400), at 9 (arguing that Ms. Hardy's claim regarding her 1996 performance evaluation, raised for the first time in her newly-created affidavit, would have been untimely had it in fact been presented during the 1997 counseling sessions).

3. <u>Allegations of Discriminatory Performance Evaluations Should Be
Dismissed Because They Were Not Timely Raised in Counseling</u>

Given that the Board raised and did not waive the timeliness defense, we believe it is incumbent on the panel to review and determine the merits of that defense. As we showed in our pleadings in this Court (Br. at 27), allegations of unlawful discrimination should be dismissed if they were not raised with a counselor within 45 days of the alleged discriminatory event. It is undisputed that plaintiffs Carter and Dorey both received the performance evaluations they complain of here more than 45 days before they first contacted an EEO counselor. These claims should therefore be dismissed.

The panel indicated that it was "skeptical of this defense given the nature of the secretaries' claims." Slip op. at 14. To the extent that the panel believes that the pattern-or-practice nature of plaintiffs' claims, *see* slip op. 8, renders the 45-day time limit irrelevant, the Board respectfully disagrees. The Board's rules, and those of the EEOC, plainly require complainants, including those alleging pattern or practice claims, to initiate counselor contact "within 45 days of the date of the matter alleged to be discriminatory." 12 C.F.R. § 268.104(a)(1); 29 C.F.R. § 1614.105(a)(1). In interpreting the analogous time bar applicable to private sector cases, the Supreme Court has held that under some circumstances incidents that predate the claim-filing period can be the basis for liability under the so-called

12

"continuing violation" theory.  *National Railroad Passenger Corp. v. Morgan,* 536

U.S. 101, 117-118 (2002).  However, under *Morgan* itself, that theory should be

inapplicable here, and in any event would still require at least one incident in the

pattern or practice to have occurred within the claim-filing period.

In *Morgan*, the U.S. Supreme Court rejected use of the continuing violation

theory to impose liability for pre-filing period claims with respect to discrete

claims such as "termination, failure to promote, denial of transfer, or refusal to

hire."  *Morgan*, 536 U.S. at 114-115.  A performance evaluation is the same kind

of "discrete act" for which the continuing violation theory is unavailing.  *See, e.g.*,

*Miller v. New Hampshire Dept. of Corrections*, 296 F.3d 18, 22 (1st Cir. 2002).

Moreover, even assuming that plaintiffs' performance evaluation claims are

deemed "pattern or practice" claims and that such claims can be considered under

the "continuing violations" rubric,[5] this would mean only that performance

evaluations that pre-date the 45-day charge-filing period can be raised if there is an

actual performance evaluation claim that arose *during* the charge-filing period.

*See*, *e.g.*, *Palmer v. Kelly*, 17 F.3d 1490, 1495-96 (D.C. Cir. 1994) (in applying the

continuing violations theory, a court must first determine whether a discriminatory

act occurred "within the limitations period" and then whether it "was caused by a

---

[5] The Supreme Court did not resolve the applicability of the continuing violation
theory to pattern-or-practice claims.  *Morgan*, 536 U.S. at 115 n.9.

13

discriminatory system in effect both before and during the limitations period.")

overruled on other grounds by *Morgan*, 536 U.S. at 114-115.[6]

Accordingly, the Board respectfully requests that the panel consider the

Board's timeliness argument.  The Board suggests that, because the Board

specifically showed that no secretary complained of a performance evaluation that

was provided in the 45 days preceding counselor contact on January 15, 1997, at a

minimum the plaintiffs' claims regarding performance evaluations must be

dismissed.  Alternatively, because the district court did not expressly rule on the

timeliness of plaintiffs' allegations before dismissing this matter, the district court

should be ordered to consider the issue on remand.

---

[6] *Morgan* held that discrete acts, such as those at issue in *Palmer*, could not be
strung together into one "unlawful employment practice" for purposes of assessing
liability for acts that preceded the charge-filing period.  *Id.* at 110-115.  In doing
so, it overturned this Court's precedent that permitted such discrete acts to be
raised so long as at least one of the acts occurred within the charge-filing period.
The *Morgan* Court held that where the continuing violation theory did apply, such
as in hostile work environment claims, "[i]n order for the charge to be timely, the
employee need only file a charge within [the claim-filing period] of any act that is
part of the hostile work environment."  *Id.* at 122.  Nothing in the Supreme Court's
decision or other decisions following it have suggested that the continuing
violation theory, when applicable, permits liability to be assessed when *no* incident
in the pattern occurred during the charge-filing period.

Dated: February 25, 2011          Respectfully submitted,


                    By:
                             /s/ Kenneth M. Willner
                             Paul, Hastings, Janofsky & Walker LLP
                             875 15th Street, N.W.
                             Washington, DC 20005
                             (202) 551-1700

                             AND

                             Richard M. Ashton
                             Katherine H. Wheatley
                             John L. Kuray
                             Board of Governors of the Federal Reserve
                             System
                             20th and C Streets, N.W.
                             Washington, DC 20551
                             (202) 452-3779


                             Counsel for Appellee
                             Ben S. Bernanke, Chairman of the Board of
                             Governors of the Federal Reserve System

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2011, by filing the foregoing Appellee's Petition for Panel Partial Rehearing through the Court's CM/ECF system, I caused the Brief to be served electronically and also caused two copies to be served by first class mail, postage pre-paid, on:

Walter T. Charlton
11213 Angus Way
Woodsboro, Maryland 21798


/s/ John L. Kuray

# ADDENDUM

**1**

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2010          Decided January 11, 2011

No. 09-5121

CYNTHIA ARTIS, ET AL.,
APPELLANTS

v.

BEN S. BERNANKE, CHAIRMAN OF THE BOARD OF GOVERNORS
OF THE FEDERAL RESERVE SYSTEM,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cv-00400)

———

*Walter T. Charlton* argued the cause and filed the briefs
for appellants.

*Kenneth M. Willner* argued the cause for appellee.  With
him on the brief were *Richard M. Ashton* and *Katherine H.
Wheatley*, Associate General Counsel, Board of Governors of
the Federal Reserve System, and *John L. Kuray*, Senior

2

Counsel. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: BROWN, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Appellants are members of a putative class of secretaries employed currently and formerly by the Federal Reserve Board. They claim the Board systematically discriminated against them on account of their race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The district court dismissed the complaint for failure to exhaust administrative remedies. Because we conclude the secretaries completed informal counseling in a manner sufficient to give the Board an opportunity to investigate their claims, we vacate the district court's dismissal of their complaint.

I

Some of these secretaries appeared before us in 1998 when we affirmed the district court's dismissal of their first putative class action without prejudice, due to their failure to exhaust administrative remedies. *Artis v. Greenspan* (*Artis I*), 158 F.3d 1301, 1306–08 (D.C. Cir. 1998). Board regulations provide that "[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or disability must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 12 C.F.R. § 268.104(a). In *Artis I*, we held the putative class failed to complete counseling before bringing their claims of agency-wide discrimination. The would-be class agents, who were all employed in a single division of the

3

Board, had failed to "identify any agency-wide discriminatory personnel practices" in counseling. 158 F.3d at 1308. Instead, "[t]he four named complainants only addressed Board-wide complaints by way of asking for data on other secretaries." *Id.* at 1307.

While the Board's motion to dismiss was pending in *Artis I*, the same putative class initiated a new round of counseling—this time represented by secretaries employed throughout the Board.[1] The Board's Equal Employment Opportunity ("EEO") counselors held group counseling sessions on January 15 and February 13, 1997, attended by several of the secretaries and their counsel. No contemporaneous record of the group counseling sessions exists.

On January 17, 1997, in response to the Board's request for information at the January 15 group counseling session, the secretaries submitted fourteen identical copies of a document entitled "Resubmission of Class-Action Complaint." In that document, the secretaries alleged "a systematic and pervasive pattern of discrimination against African-American . . . secretaries" by the Board. In particular, the secretaries claimed the Board paid them lower salaries than non-minority secretaries, awarded them fewer and smaller bonuses, granted them fewer promotions, deflated their performance appraisals, denied them privileges and training that non-minority secretaries enjoyed, unfairly enforced leave procedures against them, and discriminated against them in the quantity and quality of work assignments.

---

[1] For example, Barbara Carter was employed in the Bank Operations Division, Donna Dorey by the Research and Statistics Division, and Donna Love-Blackwell by the Banking Supervision and Regulation Division.

4

Between approximately January 24 and February 18, 1997, the Board's counselors met individually with nine secretaries, including six who are named plaintiffs in this case. In the individual counseling sessions, the secretaries confirmed the general allegations in the "Resubmission," and some of them alleged specific instances of discrimination from personal experience. The EEO counselors prepared reports based on the notes they took in these individual counseling sessions.

The secretaries filed their administrative complaint with the Board on March 3, 1997, and it wound its way through the adjudicatory functions of the Board and the U.S. Equal Employment Opportunity Commission ("EEOC") without success.[2]

---

[2] The Board dismissed the secretaries' administrative complaint on July 23, 1997. The EEOC affirmed the Board's decision on November 18, 1998. Although we had filed our decision in *Artis I* almost a month earlier, the EEOC found "no indication in the record that the United States Court of Appeals for the District of Columbia Circuit has issued a decision on the matter," and concluded that dismissal was appropriate to avoid the risk of "inconsistent rulings by the United States Court of Appeals and the Commission." *See* 29 C.F.R. § 1614.107(a)(1), (3) ("[T]he agency shall dismiss an entire complaint . . . [t]hat . . . states the same claim that is pending before or has been decided by the agency . . . or that was the basis of a civil action decided by a United States District Court in which the complainant was a party . . . ."). For reasons that are not clear on the record before us, an EEOC Administrative Law Judge dismissed the administrative class complaint again on December 18, 2000—again on the ground that it was the subject of the present civil action, then pending in the district court. The Board "fully implement[ed]" that decision on January 30, 2001.

5

After we issued our decision in *Artis I*, the secretaries filed the underlying complaint in the district court.[3] As in *Artis I*, the Board moved to dismiss for failure to exhaust administrative remedies. The district court denied the motion and ordered discovery on the issue of exhaustion—specifically "whether plaintiffs have satisfied their obligation to engage in counseling" and whether "the administrative counseling process was a futile exercise." *Artis v. Greenspan*, 223 F. Supp. 2d 149, 155 (D.D.C. 2002).

Following five years of contentious discovery, the Board renewed its motion to dismiss in 2005. The district court granted the motion on January 31, 2007, holding the court lacked subject matter jurisdiction over the secretaries' claims because, as in *Artis I*, the secretaries had failed to exhaust the counseling requirement. *Artis v. Greenspan*, 474 F. Supp. 2d 16, 19 (D.D.C. 2007).[4]

---

[3] The operative complaint in this case was filed on February 22, 2001, after the Board's "final action" on the administrative complaint. *See* Dist. Ct. Docket No. 1. It was consolidated with a virtually identical complaint filed on August 3, 1999. *See* Dist. Ct. Docket No. 6.

[4] We pause to note that failure to exhaust administrative remedies is not jurisdictional under current precedents. The Supreme Court recently clarified that "a threshold limitation on a statute's scope shall count as jurisdictional" only "[i]f the Legislature clearly states" as much; otherwise "courts should treat the restriction as nonjurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006). Because Title VII includes no such clear statement, we have recently said Title VII's exhaustion requirements are not jurisdictional. *See Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010); *see also Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) ("The filing time limit imposed by Title VII, 42 U.S.C. § 2000e-16(c), is not a jurisdictional requirement but rather is similar to a statute of limitations." (quotation marks omitted)).

6

The secretaries filed a motion for reconsideration, repeating their argument that they had successfully completed counseling in the group and individual sessions, and proffering for the first time the declaration of secretary Kim Hardy, who recounted her ten-year-old recollection of the January 15, 1997 group counseling session. Dist. Ct. Docket No. 72. The district court denied the motion, holding Hardy's declaration was not "new evidence" under the standard governing a Rule 59(e) motion to alter or amend the judgment. *Artis v. Bernanke*, 256 F.R.D. 4, 6 (D.D.C. 2009). The secretaries appealed.

"A challenge to a dismissal for lack of administrative exhaustion is a question of law, which this court reviews *de novo*." *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 807 (D.C. Cir. 2010).

II

Title VII protects government employees, like private employees, from personnel actions that discriminate on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). To bring a civil action in federal court under this section, an employee must first be "aggrieved by the final disposition of his [administrative] complaint, or by the failure to take final action on his complaint." *Id.* § 2000e-16(c). Federal Reserve Board regulations modeled on the EEOC's regulations require Board employees to "consult a Counselor . . . in order to try to informally resolve the matter" before filing an administrative complaint. 12 C.F.R. § 268.104(a); *see* 29 C.F.R. § 1614.105(a). If the employee intends to file a class action, she must satisfy the counseling requirement on behalf of the class. *See* 12 C.F.R. § 268.204(b). "If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, [s]he may not file a judicial

7

suit." *Wilson v. Peña*, 79 F.3d 154, 164 (D.C. Cir. 1996). The district court concluded the secretaries failed to satisfy this counseling requirement because they "declined to cooperate with the Board by failing to provide any meaningful information about specific instances of discrimination." *Artis*, 474 F. Supp. 2d at 19. We disagree.

A

The purpose of EEO counseling is clear from the text of the regulation: Counseling is designed to enable the agency and its employee "to try to informally resolve the matter" before an administrative charge is filed. 12 C.F.R. § 268.104(a), *quoted in Artis I*, 158 F.3d at 1306; *see Wilson*, 79 F.3d at 165 ("The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts."); *see also Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 711–12 (D.C. Cir. 2009) ("[U]nlike agency exhaustion in other contexts, the purposes of counseling and mediation are not to compile a record for judicial review but instead simply to afford the employee and the employing office an opportunity to explore and possibly resolve the employee's claims informally." (describing a similar counseling requirement in the Congressional Accountability Act)).

Where counseling produces "sufficient information to enable the agency to investigate the claim," that purpose has been served. *Artis I*, 158 F.3d at 1306 (quoting *Wilson*, 79 F.3d at 164). Thus, we recognized that "where a complainant has pleaded a nonpromotion claim to the agency, it is not her responsibility to identify the positions for which she applied." *Id.* at 1308 (citing *Mangiapane v. Adams*, 661 F.2d 1388 (D.C. Cir. 1981) (per curiam)). To hold otherwise would turn the

8

informal counseling requirement into a trap for unwary
counselees rather than a step toward remediation, and it would
violate the principle that "Title VII's exhaustion requirement
should not be read to create useless procedural technicalities."
*President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980).

An agency risks misusing the counseling requirement
when it demands excessively detailed support for a class-wide
complaint alleging a pattern and practice of subtle financial
and professional discrimination. Unlike an allegation of overt
harassment or a specific instance of retaliation against an
individual employee, class-wide claims of systemically
depressed salaries, performance ratings, advancement
opportunities, and the like can often be proven only by a
statistical comparison of the employer's treatment of the class
to its treatment of non-minority employees. *See generally
Segar v. Smith*, 738 F.2d 1249, 1267 (D.C. Cir. 1984) ("A
plaintiff class seeking to show a pattern or practice of disparate
treatment must carry the initial burden of offering evidence
adequate to create an inference that employment decisions
were based on a discriminatory criterion illegal under [Title
VII]. This usually means providing evidence—often in
statistical form—of a disparity in the position of members of
the plaintiff class and comparably qualified whites." (citation,
quotation marks, and emphasis omitted)). Usually, such an
analysis will be possible only after the employees obtain data
from their employer, whether informally or through discovery.
It would be perverse to dismiss a complaint for failure to
provide adequate detail in counseling when all of the relevant
data is in the employer's exclusive control.

B

In light of the nature of the secretaries' claims, the
information they provided collectively and in individual

9

counseling sessions satisfied the counseling requirement of 12 C.F.R. § 268.104(a). At the first group counseling session on January 15, 1997, the EEO counselor and the Board's lawyer met with approximately fourteen secretaries and requested more information about their claims. In response to the Board's request, the secretaries provided a list of "class allegations" in a document entitled "Resubmission of Class-Action Complaint." Copies of that document were signed individually by several of the putative class agents. The "Resubmission" alleged on behalf of the "named Complainants and the members of their putative class" that the Board discriminated against them by

> a.   Failing to pay class members at the comparable hourly rate or salary paid to non-class members who were no more qualified than were the class members.
> b.   Failure to pay the same amount of money for cash awards, merit increases, lump sum salary adjustments or other forms of bonuses to class members as was paid to comparable non-class members for similar performance. . . .
> c.   Failing to award class members cash awards, merit increases, special achievement awards, lump sum salary adjustments or other forms of bonuses as was done for comparable or inferior non-class members.
> d.   Failing to adequately and properly train class members as comparable non-class members were trained.
> e.   Maintaining certain positions for non-African-Americans and other positions for African-Americans.

10

    f.    Maintaining certain facilities, within [the Board's] workplace, which are segregated and inaccessible for African-Americans.

    g.    Failure to provide class members with equal amount [sic] of personal time on the phone as is afforded non-class members.

    h.    Failure to provide class members with equal time away from the office for personal reasons as is afforded non-class members.

    i.    Failure to treat class members equally with regard to utilization and enforcement of leave procedures and records as is afforded to non-class members.

    j.    Disparate treatment with regard to distribution of work, both in regards to workload and quality of assignment.

    k.    Failure to provide accurate Performance Appraisals, such as PMPs (Performance Management Programs) or its predecessors, for class members and non-class members, thereby creating a false discrepancy in the abilities of class members when compared to non-class members. African-Americans' PMPs are deflated and non-African-Americans' PMPs are inflated as a systematic practice.

    [*l.*]    Failing and refusing, and continuing to fail and refuse, to promote Complainants on the basis of race.

11

All of these allegations were affirmed in individual counseling sessions. Class agents corroborated most of them with relevant examples of personal discrimination.[5]

Barbara Carter specifically addressed allegations (a), (d), (i), and (k). She told a counselor she was compensated less than comparable white employees because she had been "redlined since the early 70's." Carter also said her performance appraisal was deflated in the years 1993–1996 and she was not permitted to take the classes she was told were necessary to achieve an outstanding rating. Carter said her supervisor, Joyce Zigler, failed to provide her with equal personal leave when Carter was working in the Research and Statistics Division.

Donna Dorey specifically addressed allegations (e), (i), (k), and (l) in her individual counseling session. She alleged that "Karen See, a white female, was preselected for a position" and groomed for it even though she lacked a college degree, which the job posting purported to require. According to Dorey, the job posting's degree requirement, which was waived for preselected white candidates like Karen See, discouraged Dorey from applying because she lacked a degree. Dorey also alleged specific incidents of discrimination by her supervisor, McKosh. She said McKosh denied her request to change her work hours so she could attend college courses, but

---

[5] The only general allegations that were not directly corroborated by the specific allegations of class agents in counseling were (b), (f), (g), and (j), relating to the *amount* of money awarded in bonuses to class members, segregated facilities, discriminatory telephone usage policies, and unfair distribution of work. This appeal does not require us to decide whether these four claims are sufficiently related to others for which the secretaries exhausted administrative remedies such that they are proper subjects of the civil action. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).

12

allowed a white employee to change her hours to join a vanpool. Dorey also claimed her leave requests are treated differently from those of white employees. She said McKosh once "humiliated her in front of the Board" by describing the circumstances of one particular request for leave. Dorey says her managers discussed her leave requests with human resources and shared personal information with other employees including Rena Carlton, an employee relations specialist. Dorey also claimed that the Board's EEO Director, Sheila Clark, and EEO Counselor, Millie Wiggins, discouraged her from filing a previous EEO complaint alleging discrimination in her performance rating.

Donna Love-Blackwell specifically addressed allegations (c), (e), and (*l*). She claimed she had never received a cash award as white secretaries had, despite her excellent performance ratings. Love-Blackwell also said she had applied without success for other positions and that "this type of movement is easier for nonminorities" who are "primped for positions."

Yvette Williams specifically addressed allegation (h). She claimed she was permitted to work out only within a prescribed lunch hour, while non-minorities were allowed to take their lunch break at any time.[6]

---

[6] The secretaries also argue statements secretary Kim Hardy allegedly made at the January 15, 1997 group counseling session should have been included in a counseling report and would confirm that she satisfied the counseling requirement. The district court did not abuse its discretion in refusing to consider Hardy's 2007 declaration. Her recollection was previously available to the secretaries, so her declaration was not an appropriate basis for a motion to alter or amend the judgment. *See Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006).

13

Despite this evidence in the notes of the Board's own counselors, the district court found the secretaries "fail[ed] to provide any meaningful information about specific instances of discrimination." 474 F. Supp. 2d at 19. To the contrary, the secretaries argued consistently that they "counseled fully and completely to the extent allowed by the Board." Dist. Ct. Docket No. 42, at 7. Their response to the Board's motion to dismiss incorporated by reference the previously filed counselors' reports. *Id.* at ii. In a motion for reconsideration, the secretaries directed the district court's attention to individual counseling reports, including those of Carter, Dorey, Love-Blackwell, and Williams, and quoted them at length. Dist. Ct. Docket No. 72, at 2–3, 17–28. As the Board admitted in response to that motion, "[t]hese reports . . . have previously been filed with [the district court] by both plaintiffs and defendant on numerous occasions and their contents have been exhaustively discussed in the parties' pleadings." Dist. Ct. Docket No. 73, at 2. The Board therefore conceded that the evidence of successful counseling that is now before us was properly before the district court.

Considered together, the secretaries' written description of their class allegations and their individual anecdotes of disparate treatment were sufficient to give the Board an opportunity to investigate and try to resolve their claims.

We affirmed the dismissal in *Artis I* because the four named plaintiffs each belonged to a single division of the Board and therefore could not establish commonality with the Board-wide class or "identify any agency-wide discriminatory personnel practices . . . despite the division-level decision making." *Artis I*, 158 F.3d at 1308. We noted that "[i]f secretaries (perhaps even one secretary) outside of the Legal Division had agreed to pursue counseling, the ALJ might have had a basis on which to find specific facts that are common to

14

the class." *Id.* (quotation marks omitted). That case is now before us. The secretaries' class status is relevant to counseling only in that it allows a representative plaintiff to satisfy the counseling requirement on behalf of similarly situated class members. *See* 12 C.F.R. § 268.204(b) ("An employee or applicant who wishes to file a class complaint must seek counseling and be counseled in accordance with § 268.104."). Like any other plaintiff, a class representative must simply provide "sufficient information to enable the agency to investigate the claim." *Artis I*, 158 F.3d at 1306 (quoting *Wilson*, 79 F.3d at 164). Thus, the entire class exhausted administrative remedies by virtue of the class agents' successful completion of counseling.

## C

On appeal, the Board argues that whatever counseling did occur was untimely. Under the Board's regulations, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action," unless she was unaware of the time limits or unable to meet them. 12 C.F.R. § 268.104(a). The Board now contends the secretaries' complaint is based on events that took place more than 45 days earlier or events for which the secretaries failed to "provide any time period." Appellee's Br. 27. Although we are skeptical of this defense given the nature of the secretaries' claims, we need not decide the issue because the Board waived the time limitation by failing to raise it in the district court. "A defense that has not been raised in a pleading, by motion, or at trial normally will be considered waived and cannot be heard for the first time on appeal." *Nat'l Treasury Emps. Union v. IRS*, 765 F.2d 1174, 1176 n.1 (D.C. Cir. 1985) (quotation marks and alteration omitted). Contrary to the Board's representation at oral

15

argument, Oral Arg. Recording 25:12–26, 25:47–53, the Board did not raise the time bar in its opposition to the secretaries' motion for reconsideration, *see* Dist. Ct. Docket No. 73. The Board failed to raise this defense in spite of the secretaries' explicit argument that individual secretaries, including Carter, Dorey, Love-Blackwell, and Williams, provided sufficiently specific information to satisfy the counseling requirement. *See* Dist. Ct. Docket No. 72, at 2–3.

D

The Board suggests another basis for concluding the secretaries failed to exhaust administrative remedies: their alleged failure "to engage in counseling in good faith." Appellee's Br. 10. The Board cites several instances of obstruction of the counseling process by the secretaries and their lawyer that it attributes to bad faith: Some if not all the secretaries refused to discuss personal experiences of discrimination in group counseling sessions. Some also refused to give specific examples of discrimination in their individual counseling sessions, despite the Board's request for details. Finally, the secretaries' counsel refused to agree to an extension of the 30-day counseling period so the Board could consider his request for statistical data and "obtain the information if appropriate." Assuming the Board accurately perceives a lack of good-faith cooperation in this conduct, the secretaries nevertheless satisfied the administrative counseling requirement.

The counselees' alleged bad faith is relevant only to the extent it "completely frustrat[ed] the agencies' ability to investigate complaints." *Blackmon-Malloy*, 575 F.3d at 713–14; *see Wilson*, 79 F.3d at 165. As we have explained, the Board was not so stymied. Despite their lawyer's counterproductive advice, the secretaries managed to convey

16

much more than "bare 'notice' of the basis of [their] complaint." *Artis I*, 158 F.3d at 1306. Doubtless other class agents were not as forthcoming as Carter, Dorey, Love-Blackwell, and Williams. But this is irrelevant to the administrative exhaustion issue, since a single class agent may satisfy the counseling requirement as to the entire class. *See Blackmon-Malloy*, 575 F.3d at 704 ("Under the doctrine of vicarious exhaustion, each individual plaintiff in a class action need not exhaust his or her administrative remedies individually so long as at least one member of the class has.").

III

As the Board admits, the administrative counseling requirement is "not a difficult burden to meet." Appellee's Br. 13. The secretaries fulfilled the purpose of 12 C.F.R. § 268.104(a) by advising the Board of the specific nature of their claims and offering corresponding allegations of discrimination against individual class agents. This was enough to permit the Board to investigate and try to resolve their claims. Therefore, we vacate the district court's order dismissing the secretaries' complaint and remand for further proceedings consistent with this opinion.

*So ordered.*

**2**

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

I.      Parties and Amici

No parties, intervenors, or amici appeared before the district court other than the parties to this appeal, Cynthia Artis, et al., plaintiffs, and Ben S. Bernanke (and his predecessor, Alan Greenspan), as Chairman of the Board of Governors of the Federal Reserve System, defendant.

II.     Rulings Under Review

A.      Order and Memorandum Opinion dated January 31, 2007, granting appellee's Motion to Dismiss, issued by Emmet G. Sullivan, United States District Judge, contained at Joint Appendix ("JA") 41, reported at *Artis v. Greenspan,* 474 F.Supp.2d 16 (D.D.C. 2007).

B.      Order and Memorandum Opinion dated March 2, 2009, denying appellants' Motion to Alter or Amend Judgment, issued by Emmet G. Sullivan, United States District Judge, contained at JA 49, reported at *Artis v. Bernanke,* 256 F.R.D. 4 (D.D.C. 2009).

C.      Opinion and Judgment dated January 11, 2011, issued by this Court vacating the district court dismissal.

III.    Related Cases

This case has not previously been before this Court and there are no related cases currently pending in this Court or in any other court.

1